FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB 16 PM 3: 37
FEB 1 6 2001
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PERUSAHAAN PERTAMBANGAN MINYAK DAN, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 00-313 |
| CHAINAT NAVEE M/V, ET AL. | * | SECTION "L" (5) |

## ORDER AND REASONS

Before the Court is defendants' motion for partial summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. For the following reasons, defendants' motion is GRANTED.

### I. BACKGROUND

Indonesian plaintiffs Perusahaan Pertambangan Miyak Dan and PT. Tugu Pratama Indonesia entered into a joint venture with defendant Kellogg Overseas Corporation to create a production train at a natural gas plant in Bontang, Indonesia. Through its freight forwarder, Jarvis International, plaintiffs arranged for a shipment of approximately 112 crates of component machinery parts with defendant Intermarine who acted as shipping agent for defendant Industrial Marine Carriers ("IMC"). Intermarine issued a freight engagement on June 24, 1998 for carrying the cargo from Philadelphia, Pennsylvania to Bontang, Indonesia.

IMC time chartered the M/V Chainet Navee from P.T. Perusahaan Pelayaran Samudera Nasional d/b/a Karana Line for the voyage. IMC also issued four bills of lading on Karana Lines'

DATE OF ENTRY
FEB 2 0 2001

Fee
Process
X Dktd
CtRmDep
Doc.No.

forms to document the shipment of the cargo loaded in Houston and Philadelphia. The bills identify the shipper as Kellogg Overseas Corporation and the consignee as Perusahaan Pertambangan Minyak. Moreover, each bill indicates that the cargo was loaded clean on board and was to be shipped on deck at the shipper's risk and expense. Riders attached to each bill of lading identify the individual crates as packages and list the contents.

The M/V Chainet Navee received its cargo in generally good condition in Philadelphia during June of 1998. From Philadelphia, the vessel sailed to Houston, Texas to load additional cargo. During the ensuing voyage to Indonesia, the vessel encountered heavy weather from tropical storms located between Korea and Japan. The storms created high winds and wakes causing the vessel to pitch and roll violently. On August 3, 1998, the master issued a marine protest, and a later inspection of one deck showed damage to the cargo from its shifting as a result of the breaking of lashes. When the vessel finally arrived in Bontang on August 31, 1998, an attending surveyor noted damage to twenty-two packages of cargo.

Defendants move for partial summary judgment on the issue of whether their liability for damage to plaintiffs' cargo may be limited to $500 per package under the Carriage of Goods by Sea Act ("COGSA"), 42 U.S.C. § 1300, *et seq*. Plaintiffs respond that they were not afforded a fair opportunity to declare a value greater than $500 per package and therefore should not be limited in their recovery by COGSA. Plaintiffs additionally argue that a genuine issue of fact exists as to whether the damaged cargo qualifies as "packages" under COGSA.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to

any material fact and that the defendant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. "[A] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

To oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that there is a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22 (1986). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

Partial summary judgment dismissing only certain claims is appropriate under the same standards. *See* Fed. R. Civ. P. 56(d). *See also Corporate Investigative Division, Inc. v. American Telephone & Telegraph Co.*, 884 F. Supp. 220, 223-24 (W.D. La. 1995) (using same standard of review for partial summary judgment on liability alone under 56(c)). If the evidence leads to only one reasonable conclusion, summary judgment is proper. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### III. ANALYSIS

COGSA entitles a carrier to limit its liability for loss or damage to cargo to $500 per package unless the shipper declares the value of the goods on the face of the bill of lading before shipment. *See* 46 U.S.C. § 1304(5); *Brown & Root, Inc. v. M/V Peisander*, 648 F.2d 415, 420 (5th Cir. 1981). The purpose of the COGSA limitation is to "restrain the superior bargaining power wielded by carriers over shippers by setting a reasonable limitation on liability that the carriers could not reduce by contract." *Ins. Co. of North America v. M/V Ocean Lynx*, 901 F.2d

3

934, 939 (11th Cir. 1991); *see Allstate Ins. Co. v. Inversiones Navieras Imparca,* 646 F.2d 169, 171 (5th Cir. 1981). To avoid COGSA limitation, the shipper may declare the value of the goods on the face of the bill of lading and pay a higher freight rate. Alternatively, the shipper may accept COGSA limitation, profit from a lower freight rate, and procure insurance independently or not at all. The economic choice of whether to accept COGSA limitation lies with the shipper. The carrier need only provide the shipper adequate notice of the $500 limitation and a fair opportunity to declare excess value for the cargo. *See Ins. Co. of North America,* 901 F.2d at 939 (citing *Brown,* 648 F.2d at 420).

The Court finds that defendants' satisfy the requirements for the per package limitation provided by COGSA. Plaintiffs had sufficient notice of the per package limitation and had a fair opportunity to declare a higher value for the cargo. A "fair opportunity" to declare a higher value for the cargo at issue in this case is demonstrated by the reference to COGSA in the applicable bills of lading and adequate space to declare a higher value on the face of the bills of lading and the Liner Booking Note. Moreover, the tariff filed with the Federal Maritime Commission put plaintiffs on notice that they could declare a higher value for the cargo. The Court also notes that the parties are sophisticated in maritime transactions and are intimately familiar with maritime shipping arrangements. Because the evidence shows that plaintiffs had a fair opportunity to declare a higher value for their goods but declined to do so, the $500 per package limitation applies to the cargo at issue in this case.

Plaintiffs additionally argue that defendants are not entitled to the COGSA package limitation because the individual crates of cargo do not constitute "packages" under COGSA. Evidence from the bills of lading indicate otherwise. The bills of lading in this case note the

4

number of units under the column labeled "NO. OF PKGS." *See* Dfs.' Ex. A. Riders attached to the bills also describe each unit and whether it is crated or on skids. *See id.* Because the evidence demonstrates that the parties considered the individual crates of cargo as packages, COGSA limitation is appropriate. *See Seguros "Illimani" S.A. v. M/V Popi P.*, 929 F.2d 89 (2nd Cir. 1991); *Aluminios Pozuelo Ltd. v. S.S. Navigator*, 504 F.2d 152 (2nd 1968); *see also* Michael F. Sturley, *An Overview of the Considerations Involved in Handling the Cargo Case*, 21 TUL. MAR. L.J. 263, 325-329 (1997).

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment to limit liability to $500 per package pursuant to COGSA is GRANTED.

Done this 15 day of February, 2001
New Orleans, Louisiana

UNITED STATES DISTRICT JUDGE